UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JULIA JAMES,

                      Plaintiff,

             -against-

FEDERAL RESERVE BANK OF NEW YORK,
SAM OGE, and ROBERT FOSTER, et al.,

                      Defendants.
----------------------------------------------------X

**MEMORANDUM & ORDER**

01-CV-1106 (RJD)(VVP)

DEARIE, District Judge.

Plaintiff brings this action against her former employer, the Federal Reserve Bank of New York, pursuant to 42 U.S.C. Section 1981, Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").[1] Plaintiff alleges discrimination and retaliation based on gender, race, disability, and color. Plaintiff also brings a claim for intentional infliction of emotional distress. The Bank moves to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and to strike plaintiff's claim for punitive damages pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is granted in part and denied in part.

I. **Background**

The Court considers as true for present purposes the following allegations, which plaintiff

---

[1] On June 14, 2001, plaintiff withdrew her Section 1983 and 1985 claims, added a claim under Section 1981, and dropped Mr. Robert Foster as a defendant. June 14, 2001 Ltr. from N. Kinigstein to Court, Def. Mem. Ex. 1. On October 13, 2004, the Court granted plaintiff's request to drop defendant Sam Oge from this action. See Oct. 13, 2004 Mem. & Order.

1

Julia James makes in the complaint and in EEOC charges.[2]

In 1970, the Federal Reserve Bank of New York hired James, an African-American woman born in 1948. The Bank promoted her to Senior Register Mail Clerk in 1983. According to James, she only received this promotion after complaining that the Bank unfairly promoted a white woman over her. Plaintiff complains that she has not received a promotion since then, despite generally favorable performance evaluations. Amend. Compl. ¶¶ 8-10.

The complaint states that plaintiff filed a "Title VII charge" against the Bank in 1987 "based on discrimination due to age and sex." Id. ¶ 11. Plaintiff provides no information with respect to the resolution of this charge. Plaintiff now alleges that since the 1987 charge, she "has been subjected to permanent job stagnation accompanied by a pattern of slurs and innuendoes based on race, gender and age." Id. ¶¶ 11-12.

The Bank offered James a promotion in March 1994 on the condition that she work the night shift. A single parent raising a six-year-old son, James requested that she be promoted to the day shift instead of the night shift, but the Bank declined. Id. ¶ 14.

According to James, she often trained many of her co-workers and supervisors, and in May

---

[2] Because James expressly referred to the EEOC charges in the amended complaint, the Court considers the allegations in the charges incorporated by reference and may consider the EEOC charges without converting this motion into one for summary judgment. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (noting that the court would treat plaintiff's allegations in her EEOC affidavit as an integral part of her pleadings); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (holding that the district court could consider documents submitted by defendants of which plaintiff had undisputed notice and which were integral to plaintiff's claim). The Court takes judicial notice of these administrative decisions. See Evans v. New York Botanical Garden, No. 02 Civ. 3591, 2002 WL 31002814, *4 (S.D.N.Y. Sept. 4, 2002) ("A court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.").

1999, James received the President's Award of $2500 for training the night shift. Id. ¶¶ 18-19.

James claims that in February 2000 supervisor Robert Foster called her and a female co-worker "heifers" and "sluts." James also asserts that her immediate supervisor Sam Oge "constantly harass[ed] her and treat[ed] her in a different and disparate manner from her male co-worker[s]." Id. ¶¶ 15-16. The complaint states that "Oge [would] give the male co-worker instructions on how to do a job, but not tell Ms. James anything, and then criticize her for not doing the job properly." Id. According to James, "[s]imilarly situated white/male employees [were] not treated in this manner. Id. Oge told James on several occasions that in his country, "men do not like women like her because they are too strong-headed." Id. ¶ 17.

In February 2000, James was reprimanded for attending a funeral without permission, even though she had obtained prior authorization from management. Id. ¶¶ 44-47.[3]

Plaintiff filed a discrimination complaint with the Bank's internal human rights office on March 7, 2000. According to plaintiff, the Bank told her verbally that there was no basis for her complaint. Plaintiff alleges that the Bank's refusal to make a written determination violated internal Bank rules. Id. ¶ 20.

In summer 2000, plaintiff requested a transfer out of the Post Office division to accommodate her high blood pressure, a condition with which she was diagnosed in 1997. Id. ¶¶ 21-22. Though she was taking medication to control her blood pressure, she claimed that the stressful job environment exacerbated her condition. Id. ¶ 21. The Bank denied her transfer request on August 28, 2000. Feb. 8, 2001 EEOC Charge, Def. Mem. Ex. 3. According to

---

[3] Although plaintiff claims in the complaint that she was reprimanded in February 2000, plaintiff states in her opposition brief that she was reprimanded for attending the funeral in February 2001. Pl. Opp. at 5.

plaintiff, the Bank refused to engage in any discussion regarding an accommodation for her condition. Amend. Compl. ¶ 43.

On November 13, 2000, plaintiff filed a complaint with the EEOC, alleging age and sex discrimination as well as retaliation for the 1987 charge. Id. ¶ 23; Nov. EEOC Charge, Def. Mem. Ex. 2.[4] The EEOC declined to investigate, and on November 28, 2000, the EEOC issued a right to sue letter. Plaintiff alleges that the harassment increased after she filed the EEOC charge. Amend. Compl. ¶ 24.

Plaintiff claims that her overall health deteriorated as a result of the hostile work environment. Id. ¶ 41. On January 18, 2001, James became ill from stress, and the Medical Division of the Bank sent her home due to highly elevated blood pressure. Apr. 20, 2001 EEOC Charge, Def. Mem. Ex. 4. Although James returned to work on January 22, 2001, she claims that her high blood pressure then worsened due to an intense barrage of insults and slights, forcing her to take leave from January 24 to February 13, 2001. Id.

On February 8, 2001, plaintiff filed another charge with the EEOC, alleging retaliation and age and disability discrimination; on March 7, 2001, she received another right to sue letter. Feb. 8, 2001 EEOC Charge, Def. Mem. Ex. 3. Plaintiff claims that the Bank retaliated against her for filing the November EEOC charge by threatening to terminate her. Amend. Compl. ¶ 38. The Bank gave James a below average performance evaluation and a "lower percentage salary increase" in January 2001, whereas prior to filing the November 2000 EEOC complaint, she had always received above average performance ratings. Id. ¶¶ 26-27. Plaintiff claims that in her job

---

[4] Plaintiff states the complaint was filed with the EEOC on November 16, 2000, but the actual charge of discrimination is stamped "Received November 13, 2000, EEOC-NYDO." Amend. Compl. ¶ 23; Def. Mem. Ex. 2.

4

performance appraisal, the Bank's management fabricated disciplinary problems, "unjustly accus[ing] [her] of insubordination [and] exhibiting unprofessional and disruptive behavior in the workplace." Apr. 20, 2001 EEOC Charge, Def. Mem. Ex. 4; Amend. Compl. ¶¶ 28-29.

Plaintiff also contends that the Bank singled her out for "her willingness to speak up about unfair and discriminatory working conditions, such as the need for 'break' times." Amend. Compl. ¶ 48. The Bank assigned her more work than similarly situated employees, failed to pay her for the overtime she worked, and denied her training that younger, similarly situated co-workers received. Id. ¶¶ 49, 54. The Bank also held her to "a stricter standard regarding lateness, phone usage, and other office protocol than other similarly-situated younger/white employees." Id. ¶ 49.

On February 23, 2001, the Bank terminated James. James states that the Bank terminated her, "at least in part, because she was singing in the office . . . while similarly situated younger and/or white non-disabled employees ha[d] their radios blaring throughout the workplace." Amend. Compl. ¶ 57; Apr. 20, 2001 EEOC Charge, Def. Mem. Ex. 4. James claims that her termination violated Bank regulations because she did not receive the requisite number of warnings. Amend. Compl. ¶ 57. Plaintiff alleges that as a final act of retaliation, the Bank never deposited into her checking account the four weeks of vacation pay that it had promised. Id. ¶ 58. On April 20, 2001, plaintiff filed a third charge with the EEOC, alleging that the Bank had discriminated against her and terminated her in retaliation for her two previous EEOC charges. Apr. 20, 2001 EEOC Charge, Def. Mem. Ex. 4. On May 14, 2001, plaintiff received a third right to sue letter from the EEOC.

5

## II. Discussion

### A. Standard for Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 699-700 (2d Cir. 1994). Plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint need only "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). The court may only dismiss a case under Rule 12(b)(6), if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 79 (2d Cir. 2003) (internal quotations omitted).

### B. Section 1981

Under Section 1981, plaintiff must allege that defendant engaged in purposeful or intentional racial discrimination. See Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (noting that plaintiff can bring a claim for hostile work environment under Section 1981); Albert v. Carovano, 851 F.2d 561, 572-73 (2d Cir. 1988). Section 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." Gratz v. Bollinger, 539 U.S. 244, 276 n.23 (2003) (internal quotations omitted) (citation omitted). Section 1981 also protects a person's right to "the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). Plaintiff's

complaint must provide fair notice of the grounds on which the allegations of intentional discrimination rest. See, e.g., Baptiste v. The W Hotel, No. 04 Civ. 5544, 2005 WL 1020779 (S.D.N.Y. Apr. 27, 2005).

Plaintiff's Amended Complaint does not support a claim of intentional employment discrimination based on race under Section 1981. In Swierkiewicz, the Court found that plaintiff's complaint had given "fair notice" of the grounds for his claims where plaintiff's complaint "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." Swierkiewicz, 534 U.S. at 514. In contrast, plaintiff merely repeats the conclusory assertion that she was treated differently than similarly situated, younger, white, male employees in terms of promotions, training, punctuality rules, and office protocol. She does not point to facts in support of her claim that she suffered from "permanent job stagnation accompanied by a pattern of slurs and innuendoes based on race." Amend. Compl. ¶ 12. Plaintiff makes the implausible claim that the Bank terminated her at least in part for singing in the office,"while similarly situated younger and/or white non-disabled employees ha[d] their radios blaring." Id. ¶ 57; Apr. 20, 2001 EEOC Charge. Plaintiff did not check off the box marked "Race" or refer to race as the cause of discrimination in the three EEOC charges or attached descriptions, which are incorporated by reference into the complaint.

Plaintiff points to no fact, other than that she is African-American, that would provide the Bank notice of intentional or purposeful racial discrimination. Plaintiff therefore fails to state a claim for racial discrimination under Section 1981.

In addition, plaintiff cannot state a claim for retaliation under Section 1981. "[T]o be

actionable under § 1981, the retaliation must have been in response to the claimant's assertion of rights that were protected by § 1981." See Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998). Plaintiff's EEOC charges and the attached descriptions do not refer to discrimination on the basis of race. The "Title VII charge" plaintiff claims to have filed in 1987 allegedly addressed discrimination "due to age and sex," not race. Furthermore, plaintiff provides no basis for the "discrimination complaint" she claims to have filed with the Bank's "internal human right's office" in March 2000. Section 1981 does not provide protection for plaintiff's assertion of her rights. Any retaliation against plaintiff for the filing of the EEOC charges or other protected activity is therefore not actionable under Section 1981. Accordingly, the Court dismisses plaintiff's claims under Section 1981.

### C. Title VII

#### 1. Exhaustion and Timeliness

##### a. Exhaustion

Plaintiff's claims of race-related discrimination also suffer from another fatal flaw. "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003); see also Fitzgerald v. Henderson, 251 F.3d 345, 358-60 (2d Cir. 2001); Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d 683, 686 (2d Cir. 2001). "[E]xhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme." Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000) (internal quotations omitted).

In her EEOC charges, plaintiff never complains of race discrimination; rather, she alleges

that the Bank discriminated against her due to her disability, age, and gender. Courts may excuse such an omission if the claims raised for the first time in federal court are reasonably related to claims presented to the EEOC. See Legnani, 274 F.3d at 686. "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Fitzgerald, 251 F.3d at 359-60 (internal quotations omitted). Courts will find claims reasonably related if, for example, a plaintiff raised race discrimination before the EEOC but now adds national origin discrimination or where a plaintiff has failed to check the proper box on the EEOC form but has pled facts raising multiple claims. See, e.g., Tsai v. Rockefeller Univ., 137 F. Supp. 2d 276, 284 (S.D.N.Y. 2001); Dennis v. Pan Am. World Airways, Inc., 746 F. Supp. 288, 291 (E.D.N.Y. 1990).

Plaintiff's race discrimination claim is not reasonably related to the disability, age, and gender discrimination charges she raised before the EEOC. See, e.g., Culbertson v. Charosa Found. Corp., No. 03-CV-3742, 2004 WL 2370686, *3-4 (E.D.N.Y. Oct. 18, 2004); O'Neal v. State Univ. of New York, No. CV-01-7802, 2003 WL 1524664, *2-3 (E.D.N.Y. Mar. 24, 2003); Mitchell v. Fab Indus., Inc., No. 96-0095, 1996 WL 417522, *3 (E.D.N.Y. July 25, 1996). Nowhere in her EEOC complaints or the attached statements did plaintiff allege any type of race discrimination, and the EEOC would have had no reason to investigate race discrimination. Accordingly, the Court finds that plaintiff failed to exhaust her administrative remedies with respect to race discrimination. Plaintiff's claim for race discrimination under Title VII must be

dismissed. The merits of plaintiff's Title VII sex discrimination claim are addressed below.

### b. Timeliness

The Bank argues that the majority of plaintiff's claims are time barred. When a state or local agency has jurisdiction over the case, a claimant must file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Where no state or local agency has jurisdiction, the claimant has 180 days to file a charge with the EEOC. Id.

According to the Bank, the 180-day period applies in this case because no state or local agency has jurisdiction over a federal instrumentality, such as the Bank. The Bank points to New York State Division of Human Rights ("SDHR") decisions dismissing complaints against the Bank for lack of jurisdiction because the Bank is "a corporate instrumentality of the United States Government . . . [and] [a]s such, it is not subject to the HRL." See Def. Mem. Ex. 5. The Bank cites Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984) for the proposition that the SDHR's interpretation of jurisdictional limits is entitled to substantial deference. Id. at 842-44. The Bank relies on cases in which courts have found that the Port Authority, a bi-state agency, is not subject to the jurisdiction of either the New York or New Jersey state anti-discrimination agency. See Rose v. Port Auth. of New York & New Jersey, 13 F. Supp. 2d 516 (S.D.N.Y. 1998); Baron v. Port Auth. of New York & New Jersey, 968 F. Supp. 924 (S.D.N.Y. 1997). According to the Bank, all claims against the Bank brought under Title VII or the ADA that relate to incidents more than 180 days prior to the November 8, 2000 charge are time barred.

Plaintiff counters that under Greater Buffalo Chapter, American Red Cross v. State Division of Human Rights, 504 N.Y.S.2d 882 (4th Dep't 1986), the SDHR does have jurisdiction

10

over the Bank and that the 300-day period should apply. Id. at 884-85. In Greater Buffalo Chapter, the Appellate Division concluded that the Red Cross, a "federal instrumentality" like the Bank, was subject to "New York's exercise of its police powers under the Human Rights Law" because "the federal Civil Rights Act both permits and contemplates the enforcement of state employment discrimination law." Id. at 885. The Appellate Division found that "requiring a local chapter of the Red Cross to comply with a state fair employment law cannot be said to interfere with the national purposes and federal character of the Red Cross." Id. The court noted that "the [Red Cross] employees are not federal employees and there is no claim that the personnel department of the Red Cross is centralized." Id. The Bank emphasizes, however, that the SDHR in Greater Buffalo itself recognized that the Red Cross was subject to state human rights law. Id. at 883.

Only one district court in this Circuit has directly addressed this issue. In Moodie v. Fed. Reserve Bank of New York, 831 F. Supp. 333 (S.D.N.Y. 1993), Judge Lasker held that the Bank is subject to New York State Human Rights Law. The court reasoned that Section 341 of the Charter of the Federal Reserve Bank, which authorized the Bank to dismiss "at pleasure" employees and officers, did not preempt New York State Human Rights Law. Id. at 336-37 (denying the Bank's motion for summary judgment on plaintiff's state law race discrimination claim). In response to the Bank's motion for re-argument, the court reiterated its opinion that "Congress did not intend [the Bank's status as an employer at will] . . . to preempt state anti-discrimination laws that are consistent with federal anti-discrimination legislation." Moodie v. Fed. Reserve Bank of New York, 835 F. Supp. 751, 753 (S.D.N.Y. 1993) (clarifying that "the New York State Human Rights Law with regard to race discrimination in employment . . . does

not impose additional burdens on the Bank beyond the legal constraints of Title VII");[5] see also Thompson v. Fed. Reserve Bank of New York, 242 F. Supp. 2d 368, 369-71 (S.D.N.Y. 2003) (applying the 300-day period to a Title VII race discrimination charge against the Bank, without any discussion of whether the 180-day period should be applied instead).

Circuits are split as to whether the Federal Reserve Act preempts state anti-discrimination laws. See Khan v. Fed. Reserve Bank of New York, No. 02 Civ. 8893, 2005 WL 273027, *12 (S.D.N.Y. Feb. 2, 2005) (collecting cases); compare Ana Leon T. v. Fed. Reserve Bank of Chicago, 823 F.2d 928, 931 (6th Cir. 1987) (concluding that the Federal Reserve Act's "dismiss at pleasure" language preempts state laws prohibiting employment discrimination); Evans v. Fed. Reserve Bank of Philadelphia, No. Civ.A. 03-4975, 2004 WL 1535772, *5-6 (E.D.Pa. July 8, 2004) (rejecting plaintiff's characterization of the "'dismiss at pleasure' language in the Federal Reserve Act as merely limiting contractual employment rights" and dismissing state law claims on finding that "the Federal Reserve Act preempts state anti-discrimination laws which provide more expansive rights or remedies than those available under federal anti-discrimination laws") with Katsiavelos v. Fed. Reserve Bank of Chicago, No. 93 C 7724, 1995 WL 103308, *2-4 (N.D.Ill. Mar. 3, 1995) (explaining that "dismiss at pleasure is analogous to dismiss at will, implying the absence of a contractual relationship between employer and employee . . . [and] the

---

[5] After a mistrial, the Bank moved to dismiss Moodie's complaint, in part, for lack of subject matter jurisdiction. The district court granted the motion, finding that the former employee's filing of a complaint against the Bank with the State Division of Human Rights barred an action in federal court where the SDHR dismissed the complaint for lack of jurisdiction and plaintiff failed to pursue the action in state court. See Moodie v. Fed. Reserve Bank of New York, 861 F. Supp. 10 (S.D.N.Y. 1994). On appeal, the Second Circuit affirmed the district court's decision without addressing the issue raised by defendant of whether the Bank is subject to state anti-discrimination laws. Moodie v. Fed. Reserve Bank of New York, 58 F.3d 879, 881-82 (2d Cir. 1995).

right to be free from discrimination is not a contractual right, and therefore is not necessarily embodied in the dismiss at pleasure language").

The Court finds Moodie persuasive. The Court does not find any conflict between the Federal Reserve Act and state anti-discrimination law. There has been no suggestion that applying New York Human Rights Law to the Bank would interfere with the Bank's federal function. Conclusory determinations by the SDHR that it lacks jurisdiction over the Bank are not binding on this Court. The Court concludes that the Bank is subject to the jurisdiction of the SDHR and the 300-day period applies in this case. Discovery is necessary to determine whether acts alleged to fall outside the 300-day period are interrelated and meet the requirements of the continuing violations exception to the statute of limitations.[6]

### 2. Claim under Title VII

#### a. Hostile Work Environment[7]

Title VII prohibits workplace harassment that is so severe or pervasive as to alter the plaintiff's employment conditions. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).[8] The harassment must be both objectively and subjectively objectionable. Id. Factors relevant to the analysis include the frequency and severity of the conduct, whether the harassment was physically

---

[6] The continuing violations exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998) (internal quotations omitted) (citations omitted).

[7] As previously noted, plaintiff failed to exhaust administrative remedies with respect to the race discrimination claims under Title VII and cannot state a claim for hostile work environment due to race discrimination.

[8] The standards to state a claim for racial and sexual harassment are generally the same. See Faragher v. City of Boca Raton, 524 U.S. 775, 787 n.1 (1998).

threatening or humiliating, and whether the harassment interfered with the employee's work performance. Id. at 23. Under Swierkiewicz, plaintiff must provide fair notice of her claims, as well as the grounds upon which the claims rest. 534 U.S. at 512. Plaintiff fails to do so.

Plaintiff alleges she was "constantly harrass[ed]" and subjected to "a pattern of slurs and innuendoes based on race, gender and age." But plaintiff makes only two allegations: (1) she was called a "heifer" and a "slut" by a supervisor on a single occasion in February 2000 and (2) Oge told her that "in his country men do not like women like her because they are too strong-headed." Amend. Compl. ¶¶ 15-17. These isolated remarks, and even repetition of Oge's comment "on several occasions," do not provide a basis for relief. Id. Plaintiff's argument that a combination of verbal harassment, retaliation, and disparate treatment created a hostile work environment also fails. Plaintiff offers merely her own conclusory assertions that her gender played a role in how she was treated.

Post-Swierkiewicz, district courts in this Circuit have dismissed hostile work environment claims at the pleadings stage where the alleged conduct was "not severe or pervasive enough to warrant relief." See, e.g., Gratton v. JetBlue Airways, No. 04 Civ. 7561, 2005 WL 1251786, *9 (S.D.N.Y. May 25, 2005) (finding that "[a]lthough the Second Circuit has repeatedly cautioned against setting the bar too high, the behavior that [plaintiff] alleges constituted harassment was not of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse") (internal quotations omitted) (citation omitted); Prince v. Cablevision Sys. Corp., No. 04 Civ. 8151, 2005 WL 1060373, *8 (S.D.N.Y. May 6, 2005), citing Whyte v. Contemporary Guidance Servs., Inc., No. 03 Civ. 5544, 2004 WL 1497560, *4 (S.D.N.Y. July 2, 2004) ("Plaintiff has not pled a sufficiently severe incident or a series of

harassing incidences necessary to state a legally viable claim for hostile work environment.").

The allegations in the complaint do not raise an inference that these incidents were so severe or pervasive as to alter the terms and conditions of plaintiff's employment. No relief for a hostile work environment claim "could be granted under any set of facts that could be proved consistent with [her] allegations." Swierkiewicz, 534 U.S. at 514. Because plaintiff fails to give fair notice of any facts or circumstances that could support a hostile work environment claim, plaintiff's claim must be dismissed.

### b. Retaliation Claim under Title VII

To succeed on a claim of retaliation, plaintiff must show that (1) the employee engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. Quinn, 159 F.3d at 769. Yet, plaintiff need not allege a *prima facie* case of retaliation to survive a motion to dismiss. Swierkiewicz, 534 U.S. at 508-12. The Bank argues that plaintiff's amended complaint fails to plead sufficient facts to establish a claim for retaliation. At this point in the proceedings, the Court is constrained to disagree.

Plaintiff asserts that just one month after the November 2000 EEOC charge she was threatened with termination and received her first below average performance rating. Amend. Compl. ¶¶ 26-27, 38, 54. Moreover, the Bank terminated her on February 23, 2001, less than three weeks after her February 8, 2001 EEOC charge and just over three months after the November 2000 EEOC charge. Id. ¶¶ 23, 34, 57-58.

Plaintiff also describes other discriminatory actions leading up to her termination that could be considered adverse employment actions. Plaintiff alleges that after filing a Title VII

15

charge against the Bank in 1987 "based on discrimination due to age and sex," she suffered "permanent job stagnation accompanied by patterns of slurs and innuendos based on race, gender and age." Id. ¶¶ 11-12. In addition, plaintiff states that on March 7, 2000, she filed a charge with the internal human rights office, and a few months later, in summer 2000, the Bank denied her request to transfer out of the Post Office division.

More information is necessary to determine whether there is in fact a causal relationship between plaintiff's complaints and the Bank's alleged sex discrimination. Plaintiff has adequately stated a claim for retaliation. The Bank's motion to dismiss this claim is denied.

## D. ADA[9]

### 1. Discrimination claim

To establish a disability discrimination claim, a plaintiff must show that (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). A claimant is considered disabled under the ADA if she has, or is regarded as having, a physical or mental impairment that *substantially* limits a major life activity. 42 U.S.C. § 12102(2). Establishing disability under the ADA is an individualized, fact-specific inquiry. Sutton v. United Air Lines, 527 U.S. 471, 483 (1999). Plaintiff need not plead "specific facts establishing a prima facie case of discrimination" to

---

[9] The ADA and Title VII have the same timeliness requirements. 42 U.S.C. § 12117(a) (incorporating the administrative prerequisites to a Title VII action). As discussed above, the 300-day period applies in this case.

survive a motion to dismiss. Swierkiewicz, 534 U.S. at 508. Plaintiff "loses sight, however, of a fundamental tenet of Rule 8, which requires that the complaint must contain, at least, a short plain statement showing that the pleader is *entitled to relief.*" Harewood v. Beth Israel Med. Ctr., No. 02 Civ 5511, 2003 WL 21373279, *5-6 (S.D.N.Y. June 13, 2003) (noting that "[i]n the absence of factual allegations showing that [plaintiff] is disabled within the meaning of the ADA, [the court] can not [*sic*] sustain her ADA claim without improperly assuming facts that are not alleged") (emphasis in original).

Plaintiff alleges that her high blood pressure constitutes a disability and she vaguely states that her "reaction to highly stressed situations may be a symptom of other covered disorders." Amend. Compl. ¶¶ 21-22, 31, 33; Pl. Opp. at 21. Plaintiff claims that her high blood pressure substantially limits the major life activities of working and interacting with others. Amend. Compl. ¶¶ 40-41. But plaintiff does not allege how her high blood pressure interfered with her ability to work. See Johnson v. N.Y. Presbyterian Hosp., 00 Civ. 6776, 2001 U.S. Dist. LEXIS 10369, *14 (S.D.N.Y. July 19, 2001) (granting defendants' motion to dismiss amended complaint where plaintiff's complaint simply alleged that plaintiff had a history of alcoholism), aff'd, 55 Fed.Appx. 25 (2d Cir. 2003). She merely asserts that the hostile work environment aggravated her high blood pressure, and that on January 18, 2001, the Bank's medical division sent her home because of her highly elevated blood pressure. Amend. Compl. ¶¶ 31, 41.

Plaintiff's request for a transfer to another division of the Bank undermines her claim that high blood pressure substantially limits her major life activities. If high blood pressure actually limited her ability to work and interact with others, transferring to another division would not address the problem. Plaintiff also states that her condition is aggravated by her stressful work

17

situation. Id. ¶ 32. Job stress does not, however, constitute a disability under the ADA. See Thompson v. Fed. Reserve Bank of New York, No. 01 Civ. 1164, 2004 WL 330243, *8 (S.D.N.Y. Jan. 23, 2003). Furthermore, James acknowledges that her "disability . . . is controlled by medication." Amend. Compl. ¶ 32. Plaintiff fails to allege that notwithstanding the medicine, she is still disabled. See Rivera v. Apple Indus. Corp., 148 F. Supp. 2d 202, 213 (E.D.N.Y. 2001) (collecting cases). In the instant case, "no relief could be granted under any set of facts that could be proved consistent with the allegations" set forth by plaintiff in her complaint. Swierkiewicz, 534 U.S. at 514. Accordingly, plaintiff's disability discrimination claim is dismissed.

### 2. Retaliation claim

"[E]ven if [plaintiff] has failed to prove that there was a violation of the ADA, [a] defendant may still have retaliated against [plaintiff] for engaging in protected conduct." Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (citations omitted). As explained above in the Title VII context, the amended complaint adequately pleads the elements of a retaliation claim. Plaintiff alleged in her February 8, 2001 EEOC charge that the Bank discriminated against her due to her disability. The Bank then terminated her two weeks later. More information is needed to determine whether there is a causal relationship between plaintiff's complaint and her termination. The Bank's motion to dismiss plaintiff's retaliation claim under the ADA is therefore denied.

### E. NYSHRL and NYCHRL

Both the NYSHRL and the NYCHRL prohibit discrimination on the basis of age, race, creed, color, national origin, sexual orientation, sex, disability, and marital status; they also forbid retaliation. N.Y. Exec. Law §§ 296(1)(a), 296(7). There is for the most part "no difference

between the rights granted under the NYCHRL and the rights granted under the NYHRL and no difference in the manner or amount of proof required." Pace v. Paris Maint. Co., 107 F. Supp. 2d 251, 266 (S.D.N.Y. 2000), aff'd, 7 Fed.Appx. 94 (2d Cir. 2001) (internal quotations omitted) (citations omitted).

The fifth and sixth causes of action in the amended complaint do not include references to the Bank. As she clarified in her opposition papers, plaintiff only asserted state and local discrimination claims against Oge, not the Bank. Pl. Opp. at 8 ("The Fifth Cause of Action is against Defendant Oge . . . . The Sixth Cause of Action is against Oge . . . ."). On October 13, 2004, the Court granted plaintiff's request to drop defendant Oge from the action. Accordingly, no claims remain under the NYSHRL and the New York City Administrative Law.

### F.   Plaintiff's Intentional Infliction of Emotional Distress Claim

In claims for intentional infliction of emotional distress, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell v. New York Post, 81 N.Y.2d 115, 121-22 (1993) (internal quotations omitted) (citations omitted). Although plaintiff alleges that she suffered from threats, retaliation, and discrimination, the allegations do not meet the strict standard of outrageousness required to state a claim for intentional infliction of emotional distress. See, e.g., Kirwin v. New York State Office of Mental Health, 665 F. Supp. 1034, 1040 (E.D.N.Y. 1987) (finding that mere "insults, indignities, annoyances and petty oppressions" did not constitute outrageous conduct). Plaintiff's emotional distress claim is therefore dismissed.

## III. Conclusion

For the reasons explained above, the Bank's motion to dismiss is granted in part and denied in part. While the allegations in the complaint do not appear to sustain a claim for punitive damages, the Court will defer addressing the legal issue until a more complete factual picture is presented after discovery. Discovery should proceed with respect to plaintiff's allegations of retaliation both for her sex discrimination claim under Title VII and for her ADA claim.

SO ORDERED.

Dated: Brooklyn, New York
August 8, 2005

RAYMOND J. DEARIE
United States District Judge