UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JULIA JAMES,

       Plaintiff,      **MEMORANDUM & ORDER**
               01 CV 1106 (RJD) (VVP)

   -against-

FEDERAL RESERVE BANK OF NEW YORK,

       Defendant.
--------------------------------------------------------X

     Julia James
     Plaintiff pro se
     Brooklyn, New York

     Thomas C. Baxter, Jr.
     Attorney for Defendant
     General Counsel
     Federal Reserve Bank of New York
     New York, New York

DEARIE, District Judge.

   Plaintiff brought this action against her former employer, the Federal Reserve Bank of

New York ("New York Fed"), pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of

1964, the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights

Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendant moved

under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the

complaint, and under Rule 12(f) of the Federal Rules of Civil Procedure to strike plaintiff's claim

for punitive damages. In a Memorandum & Order dated August 8, 2005, the Court denied

defendant's motion to dismiss with regard to plaintiff's allegations of retaliation for her sex

discrimination claim under Title VII and for her ADA claim, reserved judgment on plaintiff's

claim for punitive damages, and granted defendant's motion to dismiss plaintiff's other claims.

Defendant then moved pursuant to Federal Rule of Civil Procedure 59(e) and Rule 6.3 of the

Local Rules of the United States District Courts for the Southern and Eastern Districts of New

York, seeking reconsideration of the Court's denial of its motion to dismiss. On October 18,

2006, in a second Memorandum & Order, the Court denied defendant's motion for

reconsideration. The Court now vacates its Memorandum & Order of October 18, 2006, grants

defendant's motion for reconsideration, and affirms its Memorandum & Order of August 8, 2005

granting in part and denying in part defendant's motion to dismiss.


## BACKGROUND

The factual background of this case is set forth in this Court's August 8, 2005

Memorandum & Order. The Court now states only the facts necessary for disposition of this

motion. Plaintiff Julia James worked for the New York Fed from 1970 until her termination on

February 23, 2001. During and subsequent to her employment, plaintiff asserted various claims of

employment discrimination and retaliation in Equal Employment Opportunity Commission

("EEOC") charges dated November 13, 2000, February 8, 2001, and April 20, 2001, as well as in

a discrimination complaint filed with defendant's human rights office on March 7, 2000. Mem. in

Supp. of Def.'s Mot. to Dismiss Exs. 2-4; Amend. Compl. ¶ 20. After receiving right to sue

letters from the EEOC, plaintiff commenced this action.

Defendant moved under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure to dismiss plaintiff's claims, and under Rule 12(f) to strike plaintiff's claim for punitive

damages. In its August 8, 2005 Memorandum & Order, the Court granted defendant's motions to dismiss all of plaintiff's claims except those for retaliation pursuant to Title VII and the ADA. Defendant subsequently moved for reconsideration of the Timeliness section of the Memorandum & Order, pursuant to Federal Rule of Civil Procedure 59(e) and Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

## DISCUSSION

Defendant contends that the Court incorrectly applied the longer of two limitations periods within which a claimant must file charges with the EEOC, and that under the correct, shorter limitations period, plaintiff's claims are time-barred. Under Title VII, the longer period of 300 days applies where "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," and the shorter, 180-day period applies in all other cases. 42 U.S.C. § 2000e-5(e)(1). Defendant argues that the New York State Division of Human Rights ("NYSDHR"), which enforces state and local anti-discrimination laws, lacks the "authority to grant or seek relief" from the practices in which defendant is alleged to have engaged. Specifically, defendant argues that it is a federal instrumentality immune from state regulation unless such regulation is expressly authorized by Congress, and that state and local laws regulating employment practices are preempted by the Federal Reserve Act ("FRA").

## A. Reconsideration

The reviewing standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [facts] that the

court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "[On a Rule 6.3 motion,] a party may not advance new facts, issues, or arguments, not previously presented to the Court." Nat'l Union Fire Ins. Co. v. Stroh Cos., 265 F.3d 97, 115 (2d Cir. 2001) (quoting Polsby v. St. Martin's Press, No. 97 Civ. 690, 2000 U.S. Dist. LEXIS 596, at #2 (S.D.N.Y. Jan. 18, 2000) (internal quotation marks omitted)). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).

The crux of defendant's argument for reconsideration is that in holding that defendant was subject to NYSDHR jurisdiction, the Court overlooked the existence of conflicts between Title VII and the ADA, on one hand, and the NYSHRL, on the other. Although there was discussion at oral argument of the conflicts alleged to exist between federal and state employment law, those alleged conflicts were not addressed in the Court's August 8, 2005 Memorandum & Order. Defendant therefore is entitled to reconsideration of the preemption issue to which such conflicts would be relevant. Likewise, although defendant briefed the question whether it is a federal instrumentality presumptively immunized against state regulation of its employment practices, this issue was not fully addressed in the August 8, 2005 Memorandum & Order. Defendant therefore is entitled to reconsideration of this issue, as well.


## B. Timeliness

Defendant argues that because more than 180 days elapsed between the alleged

discriminatory conduct and plaintiff's initial EEOC filing, plaintiff's action is untimely. The 180-day time limit applies, according to defendant, because the NYSDHR lacks jurisdiction over the New York Fed, and therefore has no "authority to grant or seek relief" from the conduct alleged by plaintiff. Plaintiff responds that the Court must apply the 300-day time limit, and that her action therefore is timely. Defendant is correct that the 300-day time limit applies to plaintiff's case only if the NYSDHR has jurisdiction over the New York Fed.

Under Title VII, the time limit for filing an EEOC charge is 180 days, except that a 300-day limit applies "in a case of an unlawful employment practice with respect to which the person has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . ." 42 U.S.C. § 2000e-5(e)(1). Federal regulations narrow the exception, providing that the 300-day limit applies only where the state agency has subject matter jurisdiction over the *charge*. 29 C.F.R. § 1601.13(a)(2). The elements of an EEOC charge include not only the nature of the challenged conduct, but also the identity of the defendant. Holowecki v. Fed. Express Corp., 440 F.3d 558, 566 (2d Cir. 2006) (interpreting 29 C.F.R. §§ 1626.3, 1626.6, 1626.8). Where a state agency lacks subject matter jurisdiction over the charge, the 180-day limit applies, as if the agency did not exist: "A jurisdiction having a [fair employment practices] agency without subject matter jurisdiction over a charge (e.g., an agency which does not cover sex discrimination or does not cover nonprofit organizations) is equivalent to a jurisdiction having no [fair employment practices] agency." 29 C.F.R. § 1601.13(a)(2).

Accordingly, the Second Circuit has held that although the State of New York has a fair employment practices agency, the NYSDHR, where the NYSDHR lacks jurisdiction over a defendant in an employment discrimination case, the 180-day time limit applies, as if the

NYSDHR did not exist. Dezaio v. Port Auth. of New York & New Jersey, 205 F.3d 62, 65 (2d Cir. 2000) ("[E]ven in a deferral jurisdiction like New York, where the State's fair employment practices agency has no jurisdiction over the employer, that employer is to be viewed as if it were in a non-deferral state . . . ."). See also Vernon v. Port Auth. of New York & New Jersey, 154 F. Supp. 2d 844, 850 (S.D.N.Y. 2001) (finding that the NYSDHR lacked jurisdiction over the Port Authority, and the 180-day limit applied); Minott v. Port Auth. of New York & New Jersey, 116 F. Supp. 2d 513, 522 (S.D.N.Y. 2000) (same).

Where jurisdiction has not been in issue, some courts in the Second Circuit have described the law as though the 300-day time limit *always* applied in New York. See, e.g., Carela v. N.Y.C. Parks & Recreation Dep't, No. 98 Civ. 2753, 2005 U.S. Dist. LEXIS 18791, at *18 n.4 (S.D.N.Y. Sept. 1, 2005) ("[I]f the act occurs in a state that has anti-discrimination laws and an agency to enforce those laws, which New York State does, then a claimant has 300 days to file with the EEOC."); Subramanian v. Prudential Sec., Inc., No. CV-01-6500, 2003 U.S. Dist. LEXIS 23231, at *9 (E.D.N.Y. Nov. 20, 2003) ("Since the alleged discriminatory acts occurred in New York, which has anti-discrimination laws and an enforcement agency, plaintiff had 300 days to file his discrimination charges."). Indeed, some courts have taken this approach with regard to the Federal Reserve Bank of New York. Thompson v. Fed. Reserve Bank of New York, 242 F. Supp. 2d 368, 369 (S.D.N.Y. 2003) (applying 300-day time limit); Scott v. Fed. Reserve Bank of New York, 704 F. Supp. 441, 449-50 (S.D.N.Y. 1989) (same). This Court is bound to follow the rule of Dezaio, however. Thus, in deciding which time limit to apply in this case, the Court must determine whether the NYSDHR has jurisdiction over the New York Fed.

## C. Preemption

In its original brief, defendant asserted that the FRA preempts state and local regulation of Federal Reserve Banks' employment practices. See Mem. in Supp. of Def.'s Mot. to Dismiss at 31 ("When Congress addressed the employment practices of Reserve Banks, Congress gave Federal Reserve Banks the power to 'dismiss at pleasure' its officers and employees.") (quoting 12 U.S.C. § 341 (Fifth)). The Court addressed this issue in its August 8, 2005 Memorandum & Order, finding that the FRA did not preempt such state regulation, and basing its decision largely on Moodie v. Fed. Reserve Bank of New York (Moodie I), 831 F. Supp. 333 (S.D.N.Y. 1993), amended by Moodie v. Fed. Reserve Bank of New York (Moodie II), 835 F. Supp. 751 (S.D.N.Y. 1993). Defendant now asserts that the Court overlooked conflicts between federal employment laws (Title VII and the ADA) and the NYSHRL, and that under the Moodie decisions, these conflicts establish that the NYSHRL is preempted by federal law. For the reasons explained below, the Court finds that the NYSHRL is not preempted.

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000). Congress may do so expressly or by implication. Id. As defendant does not assert that the FRA preempts the NYSHRL expressly, the Court must consider whether it does so by implication. Implied preemption encompasses both field and conflict preemption. Field preemption occurs "[w]hen Congress intends federal law to 'occupy the field' . . . ." Id. (quoting California v. ARC Am. Corp., 490 U.S. 93, 100 (1989)). Conflict preemption occurs "where it is impossible for a private party to comply with both state and federal law, and where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and

7

execution of the full purposes and objectives of Congress.'" Id. at 372-73 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)) (internal citation omitted) (alterations in original). The categories are not, however, "rigidly distinct," and "field pre-emption may be understood as a species of conflict pre-emption." Id. at 373 n.6 (quoting English v. General Elec. Co., 496 U.S. 72, 79-80 n.5 (1990)). Where implied preemption is alleged, the basic inquiry is whether "the state law undermines the intended purpose and 'natural effect' of . . . the federal Act . . . ." Id. at 373 (quoting Savage v. Jones, 225 U.S. 501, 533 (1912)).

The FRA, which establishes the Federal Reserve Banks and governs their activities, appears to express the intent of Congress to grant the Banks significant latitude in employment decision-making. It provides that "[a] federal reserve bank . . . shall have the power . . . to dismiss at pleasure [its] officers and employees." 12 U.S.C. § 341 (Fifth). The Ninth Circuit has described a "virtually identical" provision in the National Banking Act as intended by Congress to help federally chartered banking institutions safeguard their own integrity: "[T]he original congressional intent behind the at-pleasure provision of the Bank Acts was to ensure the financial stability of the banking institutions by affording them the means to discharge employees who were felt to compromise an institution's integrity." Kroske v. U.S. Bank Corp., No. 04-35187, 2006 U.S. App. LEXIS 3367, at *18 (9th Cir. Feb. 13, 2006) (quoting Sharon A. Kahn & Brian McCarthy, At-Will Employment in the Banking Industry: Ripe for a Change, 17 Hofstra Lab. & Emp. L.J. 195, 215 (1999)). Furthermore, courts have read the FRA's "dismiss at pleasure" provision as preempting the enforcement of employment contracts. See, e.g., Mele v. Fed. Reserve Bank of New York, 359 F.3d 251, 254-55 (3d Cir. 2004); Bollow v. Fed. Reserve Bank of San Francisco, 650 F.2d 1093, 1098 (9th Cir. 1981); Obradovich v. Fed. Reserve Bank of New

8

York, 569 F. Supp. 785, 790 (S.D.N.Y. 1983).

Plainly, however, the FRA's "dismiss at pleasure" language does not permit the Federal Reserve Banks *unlimited* discretion in employment decision-making. The FRA does not preempt federal law prohibiting discrimination in employment, for example. Harding v. Fed. Reserve Bank of New York, 707 F.2d 46, 51-52 (2d Cir. 1983) (reversing and remanding to district court for decision as to Federal Reserve Bank employee's Title VII employment discrimination claims); Fasano v. Fed. Reserve Bank of New York, 457 F.3d 274, 285-87 (3d Cir. 2006), cert. denied, 75 U.S.L.W. 3350 (U.S. Jan. 8, 2007) (No. 06-634) (noting that Federal Reserve Banks are subject to the ADA). Because federal laws prohibiting employment discrimination are applicable to the New York Fed, "it follows . . . that § 341 [of the FRA] does not govern exclusively the Bank's conduct in employment affairs." Moodie I, 831 F. Supp. 333, 337 (S.D.N.Y. 1993). Indeed, the Third Circuit has held that the FRA was "impliedly amended" by a federal anti-discrimination law. Fasano, 457 F.3d at 286 ("We must conclude . . . that to the extent that the ADA . . . irreconcilably conflict[s] with § 341(Fifth), [the ADA has] impliedly amended § 341(Fifth) . . . ."). And the Ninth Circuit has reached the same conclusion with regard to the National Banking Act's "dismiss at pleasure" provision. Kroske, 2006 U.S. App. LEXIS 3367, at *29 (holding that the "dismiss at pleasure" provision of the National Banking Act was "repealed by implication . . . to the extent necessary to give effect to the [Age Discrimination in Employment Act].").

As to the precise issue in this case—whether the FRA's "dismiss at pleasure" language preempts *state* regulation of employment practices—courts have offered a variety of possible answers. Some have held that the FRA accomplishes a sweeping preemption of state employment law. See, e.g., Ana Leon T. v. Fed. Reserve Bank of Chicago, 823 F.2d 928, 931 (6th Cir. 1987)

9

(holding that the FRA "preempts any state-created employment right to the contrary."). Others have held that the FRA entirely preempts state employment laws that are inconsistent with federal laws prohibiting employment discrimination. See, e.g., Evans v. Fed. Reserve Bank of Philadelphia, No. 03-4975, 2004 U.S. Dist. LEXIS 13265, at *16 (E.D. Pa. July 8, 2004) ("[T]he 'dismiss at pleasure' language in the Federal Reserve Act preempts the application of state anti-discrimination laws which expand the rights and remedies available under federal anti-discrimination laws."). Still others have held that the FRA preempts state employment laws only to the extent that those laws conflict with their federal counterparts. See, e.g., Moodie II, 835 F. Supp. at 753 ("Congress did not intend [the FRA] to preempt state anti-discrimination laws that are consistent with federal anti-discrimination legislation.").

The Moodie decisions, on which the Court relied in its August 8, 2005 Memorandum & Order, are the only reported opinions in which a court in the Second Circuit has confronted directly the question whether the FRA preempts the NYSHRL. There, the court found that "[n]othing in the plain language of [the FRA's "dismiss at pleasure" provision indicated] that Congress intended that section to exempt the Federal Reserve Banks, in the area of employment discrimination, from statutes or regulations of the states in which they operate, particularly when the state statutory scheme is consistent with federal legislation." 831 F. Supp. at 337. It noted, as well, that in adopting Title VII, Congress "took no action to exempt the Federal Reserve Banks on the basis of their status as employers at will, or on any other basis." Id. Indeed, the Federal Reserve Bank in the Moodie case "concede[d] implicitly that the 'at pleasure' language of [the FRA did] not exempt it from Title VII's prohibition against discrimination in employment . . . ." Id. In light of this concession, and holding that the NYSHRL "create[d] no additional

employment rights in conflict with the Bank's status as an employer at will [and did not] place

additional constraints on the Bank's exercise of its statutory powers," the court in Moodie I

declined to find the NYSHRL preempted. Id. In Moodie II, the court limited its earlier

conclusion to apply only to the NYSHRL's provisions on race discrimination, stating that "the

particular provision of state law at issue in this case—the New York State Human Rights Law

with regard to race discrimination in employment—does not impose additional burdens on the

Bank beyond the legal constraints of Title VII." 835 F. Supp at 753. But the court rejected the

claim that, because provisions of the NYSHRL that were not at issue arguably conflicted with

federal law, the NYSHRL was preempted wholesale. Id. at 752-53. Instead, it declared: "None

of these purported conflicts is relevant to the case at hand, nor do they affect the earlier

determination that Congress did not intend [the FRA] to preempt state anti-discrimination laws

that are consistent with federal anti-discrimination legislation." Id. at 753.

In a case involving the "dismiss at pleasure" provision of the National Banking Act, the

California Supreme Court adopted a similar approach. Peatros v. Bank of America, 990 P.2d 539

(Cal. 2000). Having found a conflict between the National Banking Act, as impliedly amended by

Title VII and the ADEA, and California's employment discrimination statute, the court held that

federal law preempted the state statute "to the extent that it conflicts, but it does not to the extent

that it does not." 990 P.2d at 553. In so holding, the court relied on Dalton v. Little Rock Family

Planning Services, in which the United States Supreme Court adopted an approach to preemption

characterized by restraint: "In a preemption case . . . state law is displaced only 'to the extent that

it actually conflicts with federal law.' The rule [is] that a federal court should not extend its

invalidation of a statute further than necessary to dispose of the case before it." 516 U.S. 474, 476

(1996) (per curiam) (quoting <u>Pac. Gas & Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n</u>, 461 U.S. 190, 204 (1983); <u>Brockett v. Spokane Arcades, Inc.</u>, 472 U.S. 491, 502 (1985)) (internal citations omitted) (alteration in original).

In another analogous case, the United States Supreme Court held that the federal Employee Retirement Income Security Act of 1974 (ERISA) preempted the NYSHRL with respect to benefit plans within the scope of ERISA coverage, but only insofar as the NYSHRL prohibited practices that were lawful under federal law. <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 108 (1983). The <u>Shaw</u> Court rejected total preemption, reasoning that such an approach would frustrate Congress's intent to create an anti-discrimination scheme enforced jointly by the federal government and the states. <u>Id.</u> at 102. It observed that "[s]tate laws obviously play a significant role in the enforcement of Title VII" and that "Title VII *requires* recourse to available state administrative remedies." <u>Id.</u> at 101 (emphasis added). Total preemption, it held, would disrupt this scheme and defeat congressional intent:

> If ERISA were interpreted to pre-empt the Human Rights Law entirely with respect to covered benefit plans, the State no longer could prohibit the challenged employment practice and the state agency no longer would be authorized to grant relief. The EEOC thus would be unable to refer the claim to the state agency. This would frustrate the goal of encouraging joint state/federal enforcement of Title VII . . . .

<u>Id.</u> at 102. The Court acknowledged that requiring agencies charged with enforcing anti-discrimination laws to apply them selectively based on a finding of partial preemption would create "certain practical problems. Courts and state agencies, rather than considering whether employment practices are unlawful under a broad state law, will have to determine whether they are prohibited by Title VII. If they are not, the state law will be superseded and the agency will

12

lack authority to act." Id. at 105-06. But the Court dismissed this concern: "[S]tate agencies and courts are sufficiently familiar with Title VII to apply it in their adjudicative processes. Many States look to Title VII as a matter of course in defining the scope of their own laws." Id. at 106. The Court declared further that any such practical problems "are the result of congressional choice and should be addressed by congressional action." Id.

In advocating for preemption of the NYSHRL by the FRA, the New York Fed cites Evans, 2004 U.S. Dist. LEXIS 13265, in which a Pennsylvania federal district court found a state employment law to be in conflict with the federal laws governing the employment decisions of a Federal Reserve Bank. Explicitly rejecting the approach taken in Peatros, the Evans court instead found the state law totally preempted. Id. at *21. A partial preemption approach, it declared, "would require the Court to essentially rewrite the relevant provisions of the [state employment law] to parrot Federal anti-discrimination law. In so doing, the Court would risk frustrating the intent of the publicly elected legislature which enacted the [state law] in the first place." Id. Defendant points out, as well, that the Third Circuit adopted the Evans approach in Fasano, 457 F.3d at 288-90. The Fasano court rejected partial preemption based on its conclusion that "[t]here is simply no way to give full effect to . . . state laws while picking and choosing which parts of them may apply." Id. It offered an illustration:

> For example . . . the [state law] does not require exhaustion of administrative remedies; a plaintiff elects whether to proceed in the administrative arena, or in court, but a final decision in either forum is binding and renders the other forum unavailable. Were we to graft the ADA's exhaustion requirement onto the [state law], we would transform formerly final, binding administrative determinations into non-binding preliminaries to litigation. We will not step on the toes of the New Jersey legislature in this or any other like manner.

Id. at 290.

13

This Court adopts the "retail" preemption approach of <u>Moodie</u>, <u>Peatros</u>, and <u>Shaw</u>, rather than "wholesale" preemption as advised in <u>Evans</u> and <u>Fasano</u>. Where the question is one of implied preemption, the Supreme Court has called for restraint. State laws are to be found preempted only as far as is necessary to dispose of the instant case. <u>Dalton</u>, 516 U.S. at 476. As in <u>Shaw</u>, a risk exists here that "wholesale" preemption will frustrate the intent of Congress to establish a joint federal/state system for enforcing anti-discrimination laws. 463 U.S. at 102. Although "retail" preemption may present practical difficulties, these are mitigated by the familiarity of state employment agencies with the federal anti-discrimination laws. <u>Id.</u> at 106. The concern expressed in <u>Fasano</u> and <u>Evans</u>—that "retail" preemption amounts to a judicial attempt to rewrite state law—appears unfounded. To the contrary, the "retail" approach permits state employment law to be enforced to a greater extent than does the "wholesale" approach recommended in those cases, which treats an entire state anti-discrimination scheme as a nullity where it deviates in any respect from federal law. Accordingly, the Court finds that the NYSHRL is preempted, with regard to the Federal Reserve Bank of New York, only insofar as it exceeds the requirements of Title VII and the ADA.

The Court does not, however, find it necessary to decide the extent of preemption. Defendant points to numerous ways in which, it argues, the NYSHRL imposes substantive and procedural requirements that exceed those of federal law, e.g., the NYSHRL offers a more expansive definition of "disability" than does the ADA, Mem. in Supp. of Def.'s Mot. to Recons. at 11, and the NYSHRL's provision authorizing employers to pay to the State of New York "profits obtained . . . through the commission of unlawful discriminatory acts" interferes with the federal requirement that federal reserve banks transfer their net earnings to the United States

14

Treasury, Reply Mem. in Supp. of Def.'s Mot. to Recons. at 7 (citing 12 U.S.C. § 289; N.Y. Exec. Law § 297(4)(c)(v)). The concern defendant identifies as "most important[] for this discussion," Mem. in Supp. of Def.'s Mot. for Recons. at 11, is simply inapposite. Defendant argues that "the applicability of the NYSHRL expands the timeframe allowed for filing an EEOC complaint." Id. at 11-12. But the expanded timeframe for filing EEOC complaints in deferral jurisdictions is a feature of federal law, not state law. 42 U.S.C. § 2000e-5(e)(1).

As for the other ways in which the NYSHRL is alleged by defendant to impose additional burdens on the New York Fed, it is unnecessary for this Court to decide whether those alleged conflicts necessitate preemption, or even whether they exist, because no claims under the NYSHRL remain in this case. No single provision of the NYSHRL is at issue here. The issue here is jurisdiction. If the NYSHRL applies to the New York Fed in *any* case, the NYSDHR has jurisdiction, and the 300-day time limit applies. In order to prevail on the question of preemption, therefore, the New York Fed must demonstrate not that it is immune from particular provisions of the NYSHRL invoked by plaintiff, but that it is immune from *every* provision of the NYSHRL, in *every* case. Since the New York Fed has not alleged that every provision of the NYSHRL exceeds the federal requirements, this Court declines to find the NYSHRL totally preempted. Thus the Court turns to the last of defendant's claims: that it is immunized against NYSDHR regulation as a federal instrumentality.

## D. Federal Instrumentality Immunity

Defendant originally claimed federal instrumentality status in support of its argument for the dismissal of plaintiff's state law claims. Mem. in Supp. of Def.'s Mot. to Dismiss at 31.

15

Here, defendant offers this claim for a slightly different purpose: as a means of supporting its contention that it is immune from the NYSDHR's jurisdiction, with the result that the 180-day time limit should apply to and thus bar plaintiff's claims under federal law. Mem. in Supp. of Def.'s Mot. to Recons. at 4-6. It argues that this Court overlooked Goodyear, 486 U.S. 174, which it cites for the proposition that "states may not regulate federal instrumentalities unless there is 'clear and unambiguous' authorization from Congress." Reply Mem. in Supp. of Def.'s Mot. to Recons. at 2 (quoting Goodyear, 486 U.S. at 180 ("It is well settled that the activities of federal *installations* are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation.") (emphasis added)). No such authorization exists here, defendant argues, and thus it is immune from regulation by the NYSDHR. The Court disagrees.

In weighing defendant's arguments, the Court looks to the origins of federal instrumentality immunity. The Supremacy Clause of the United States Constitution declares that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This language immunizes the federal government and its instrumentalities against taxation or regulation by the states. McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819), 436-37 (Bank of the United States immunized against state taxation); Johnson v. Maryland, 254 U.S. 51, 57 (1920) (employee of U.S. Post Office immunized against state regulation).

"Instrumentality jurisprudence has never been characterized by particular clarity." Fasano, 457 F.3d at 282. But where an entity claims federal instrumentality immunity from state

16

regulation, a court must answer two fundamental questions. First, the court must determine whether that entity qualifies as a federal instrumentality for the purpose at issue. Then, if the answer to the first question is "yes," the court must determine whether that entity's status as a federal instrumentality immunizes it against the particular local or state exaction it seeks to avoid.

Some courts have focused on the first question: Is the entity claiming to be a federal instrumentality actually a federal instrumentality? See, e.g., United States v. New Mexico, 455 U.S. 720, 744 (1982) (private contractors doing business with the federal government were not federal instrumentalities for purposes of state taxation); United States v. Orleans, 425 U.S. 807, 819 (1976) (a community action agency was not a federal instrumentality for purposes of the Federal Tort Claims Act); Dep't of Employment v. United States, 385 U.S. 355, 358-60 (1966) (the Red Cross was a federal instrumentality for purposes of a state tax).

Other courts have focused on the second question: As a federal instrumentality, is the entity claiming immunity actually immune? See, e.g., Arkansas v. Farm Credit Servs. of Central Arkansas, 520 U.S. 821, 824 (1997) (although Production Credit Associations were federal instrumentalities, they could not sue for an injunction against state taxation under the Tax Injunction Act, unless the federal government was a co-plaintiff); Anderson Nat'l Bank v. Luckett, 321 U.S. 233, 247-49 (1944) (a national bank, though a federal instrumentality, was subject to a state law governing disposition of abandoned deposits); Fed. Nat'l Mortgage Ass'n v. Lefkowitz, No. 74 Civ. 4293, 1975 U.S. Dist. LEXIS 13582 at *7-9 (S.D.N.Y. 1975) (Fannie Mae, though a federal instrumentality, was subject to a state law requiring payment of interest on escrow accounts); Greater Buffalo Chapter, Am. Red Cross v. State Div. of Human Rights, 504 N.Y.S.2d 882, 884-85 (App. Div. 1986) (the American Red Cross, though a federal

instrumentality, was subject to state employment law).

This Court addresses both questions. As to whether the New York Fed is a federal instrumentality for purposes of a state law aimed at preventing discrimination in employment—in this case, the NYSHRL—this Court finds that it is. As to whether, as a federal instrumentality, the New York Fed is immune from regulation by a state fair employment practices agency—here, the NYSDHR—the Court finds that it is not.

"[T]here is no simple test for ascertaining whether an institution is so closely related to governmental activity as to become a tax-immune instrumentality . . . ." Dep't of Employment, 385 U.S. at 358-59. There is likewise no simple test for determining whether an entity is a federal instrumentality immune from state regulation. Congress has expressly designated some institutions as federal instrumentalities. See, e.g., Dir. of Revenue of Missouri v. CoBank ACB, 531 U.S. 316, 321 (2001) (citing 12 U.S.C. § 2121, conferring federal instrumentality status on banks for farm cooperatives). Elsewhere, however, courts have applied a variety of judicially created tests. In deciding whether a federal land bank was subject to attachment under state law, for example, the Supreme Court observed that such banks were "instrumentalities of the federal government, engaged in the performance of an important government function." Fed. Land Bank of St. Louis v. Priddy, 295 U.S. 229, 231 (1935). In Department of Employment, the Court applied a different test, holding that the Red Cross was a federal instrumentality based on its "status virtually as an arm of the Government." 385 U.S. at 359-60. And in New Mexico, where the question was whether corporations doing business with the government were immune from state taxation, the Court took yet another approach, declaring that "tax immunity is appropriate . . . when the levy falls on the United States itself, or on an agency or instrumentality so closely

18

connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." 455 U.S. at 735.

As defendant points out, several courts have held that Federal Reserve Banks are federal instrumentalities in the context of state taxation. Fed. Reserve Bank of St. Louis v. Metrocentre Improvement Dist. #1, 657 F.2d 183, 185-87 (8th Cir. 1981); Fed. Reserve Bank of Boston v. Comm'r of Corps. & Taxation, 499 F.2d 60, 62 (1st Cir. 1974). But few courts have confronted the question whether a Federal Reserve Bank is a federal instrumentality where it seeks immunity from regulation by a state fair employment practices agency. Moreover, these few cases reach contrary conclusions. Compare Fasano, 457 F.3d 274, 282-83 (suggesting, but not holding, that a Federal Reserve Bank was a federal instrumentality immune from regulation by a state fair employment practices agency), with Katsiavelos v. Fed. Reserve Bank of Chicago, No. 93 C 7724, 1994 U.S. Dist. LEXIS 18501, at *6-12 (N.D. Ill. Dec. 28, 1994) (declining to defer to the finding of a state fair employment practices agency that a Federal Reserve Bank was a federal instrumentality immune from its jurisdiction).

In support of its claim to be a federal instrumentality for the purposes of this case, defendant offers Fasano, in which the Third Circuit suggested, but did not actually reach, the "amply supportable conclusion that the New York Fed is a federal instrumentality" for purposes of state employment law. 457 F.3d at 283. The Fasano court began by citing the state taxation cases mentioned above, id. at 281 n.6 (citing Fed. Reserve Bank of St. Louis, 657 F.2d 183; Fed. Reserve Bank of Boston, 499 F.2d 60). Each of these cases set a low bar for federal instrumentality status. In Federal Reserve Bank of Boston, the First Circuit essentially took for granted that Federal Reserve Banks were federal instrumentalities: "[T]he present case does not

19

turn on whether federal reserve banks are federal instrumentalities. Plainly they are." 499 F.2d
62. The Eighth Circuit, in <u>Federal Reserve Bank of St. Louis</u>, applied the "important government
function" test from <u>Priddy</u>. 657 F.2d at 185 (citing, <u>inter alia</u>, <u>Priddy</u>, 295 U.S. at 231). But the
<u>Fasano</u> court went further, noting as well that Federal Reserve Banks "are not profit-seeking
enterprises," 457 F.3d at 283, and are "governed by the policy of the United States . . . ." <u>Id.</u>
(quoting <u>Am. Bank & Trust Co. v. Fed. Reserve Bank of Atlanta</u>, 256 U.S. 350, 359 (1921)). In
fact, the Third Circuit observed, "Federal Reserve Banks are surely 'virtually . . . an arm of the
Government.'" <u>Id.</u> (quoting <u>Dep't of Employment</u>, 385 U.S. at 359-60).

Although <u>Fasano</u> is not controlling, its approach is sensible. Because no single test for
federal instrumentality status exists, this Court must adopt a test appropriate to the case at bar.
Across the variety of tests described above, the core inquiry is consistent: Does the entity which
is alleged to be a federal instrumentality stand in such a close relationship to the federal
government that it must be treated as the government is treated? The tests differ principally by
degree. Where the entity in question plainly appears to be closely allied with the government (as
in the case of a Federal Land Bank), the burden of proving federal instrumentality status is low
("important government function"). Where, on the other hand, the entity traditionally has been
regarded as independent (as in the case of a private contractor), the standard is higher (i.e., such an
entity must show that it and the government do not appear to be separate entities).

In the taxation context, the Federal Reserve Bank traditionally has been regarded as a
federal instrumentality. Indeed, as defendant points out, <u>McCulloch v. Maryland</u>, the wellspring
of federal instrumentality jurisprudence, concerned a successful claim of tax immunity by the
Bank of the United States, arguably a precursor of the Federal Reserve Banks. Mem. in Supp. of

20

Def.'s Mot. to Recons. at 7-8 (citing 17 U.S. 316). While this does not necessitate the conclusion

that the New York Fed is a federal instrumentality for the purposes of state employment law, it

suggests that the Fed's burden in establishing that it merits such status should be low. Still,

because defendant here asserts its federal instrumentality status in a nontraditional statutory

context, the Court applies a test slightly more restrictive than the "very broad" "important

government purpose" test that is applicable in the context of state taxation. Lewis v. United

States, 680 F.2d 1239, 1242 (9th Cir. 1982). Like the Third Circuit in Fasano, the Court

supplements the "important government purpose" test with the more demanding "arm of the

government" test from Department of Employment, 385 U.S. at 359-60.

On this basis, this Court finds that the New York Fed is a federal instrumentality for the

purposes of state employment law. Federal Reserve Banks not only perform important

governmental functions, but operate "virtually as . . . arm[s] of the government." See Fed.

Reserve Bank of St. Louis, 657 F.2d at 185 ("[Federal Reserve Banks] conduct important

governmental functions regarding the issuance of currency, general fiscal duties of the United

States, and, in general, regulate the financial structure, either directly or indirectly, of both federal

and state banks."); Fed. Reserve Bank of Boston, 499 F.2d at 62 ("[F]ederal reserve banks . . . are

plainly and predominantly fiscal arms of the federal government.").

The conclusion that the New York Fed is a federal instrumentality does not end the

inquiry, however. The Court still must determine whether, as a federal instrumentality, the New

York Fed is immune from regulation by the NYSDHR. Clearly, federal instrumentalities are not

immune from state regulation in every case. As defendant implicitly acknowledges, Reply Mem.

in Supp. of Def.'s Mot. to Recons. at 2, even where the courts have announced immunity for

21

federal instrumentalities, they have left room for Congress to defeat that immunity. <u>Hancock v.</u> <u>Train</u>, 426 U.S. 167, 178 (1976) ("[W]here 'Congress does not affirmatively declare its instrumentalities or property subject to regulation,' 'the federal function must be left free' of regulation.") (quoting <u>Mayo v. United States</u>, 319 U.S. 441, 447-48 (1943)) (superseded by statute as noted in <u>California v. United States</u>, 215 F.3d 1005, 1010 (9th Cir. 2000)).

Moreover, in some cases, the courts have permitted state regulation of federal instrumentalities where express congressional authority is absent. <u>Mayo</u>, 319 U.S. at 446 ("There are federal activities which in the absence of specific Congressional consent may be affected by state regulation."). To cite a specific example: It is generally accepted that national banks are federal instrumentalities. <u>Franklin Nat'l Bank of Franklin Square v. New York</u>, 347 U.S. 373, 375 (1954). Nevertheless, national banks are subject to state banking laws that do not interfere with their federal function: "[The Supreme] Court has often pointed out that national banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' functions." <u>Anderson Nat'l Bank v. Luckett</u>, 321 U.S. 233, 248 (1944). Nor does national banks' exposure to state law appear to depend on specific congressional authority. To be sure, "[c]ertain provisions of the federal banking statutes explicitly subject the grant of a national bank's powers to limitations imposed by state law." <u>First Union</u> <u>Nat'l Bank v. Burke</u>, 48 F. Supp. 2d 132, 138 (D. Conn. 1999). But state laws are applicable to national banks "as a general rule," where those laws "do not unfairly discriminate against national banks, favor state-chartered banks or frustrate, destroy, interfere with, or hamper national banks' exercise of their powers." <u>Id.</u> at 138.

Recently, exercising authority conferred on it by Congress, the Treasury Department

adopted regulations including a broad statement expressly subjecting national banks to state law. 12 C.F.R. § 7.4009 (2004) (declaring that national banks are subject to state laws "not inconsistent" with national banks' powers, "to the extent that [those laws] only incidentally affect the exercise of national bank powers."). Federally chartered banks' exposure to state law predate this enactment by at least a century, however. See Atherton v. Fed. Deposit Ins. Corp., 519 U.S. 213, 222 (1997) (collecting Supreme Court cases from 1896 to 1987 finding state laws applicable to federally chartered banks); Fed. Deposit Ins. Corp. v. Raffa, 882 F. Supp. 1236, 1244-45 (D. Conn. 1995) ("[E]ven national banks, which are instrumentalities of the federal government, have always been subject to the laws of the state in which they do business.") (quoting Normand Josef Enters. Inc. v. Connecticut Nat'l Bank, 646 A.2d 1289 (Conn. 1994)).

Finally, and perhaps most significantly, some courts have held that national banks are subject to state laws governing employment. See, e.g., Kroske, 2006 U.S. App. LEXIS 3367 (national bank subject to state law prohibiting age discrimination in employment); Marques v. Bank of America, 59 Cal. App. 4th 356, 363 (Ct. App. 1997) (national bank subject to state anti-discrimination statute since "although national banks are 'federal instrumentalities' . . . states may nevertheless regulate them 'where . . . doing so does not prevent or significantly interfere with the national bank's exercise of its powers.'") (citations omitted)).

Thus the determination that the New York Fed is a federal instrumentality does not end the Court's inquiry into whether it is immune from state regulation of its employment practices; the Court must look further. Again, there are few cases directly on point. In favor of immunity, there is Fasano, in which the Third Circuit appeared to assume that a Federal Reserve Bank would be immune from state employment law, if it were found to be a federal instrumentality. But the

_Fasano_ court's tacit assumption of this point is not especially helpful. Defendant also offers <u>Osei-Bonsu v. Federal Home Loan Bank of New York</u>, 726 F. Supp. 95 (S.D.N.Y. 1989) (finding that the Federal Home Loan Bank of New York was a federal instrumentality immune from regulation by the NYSDHR). But taking the same approach as the Third Circuit in <u>Fasano</u>, the court in <u>Osei-Bonsu</u> focused on whether Federal Home Loan Banks were federal instrumentalities, not on whether, as such, they were immune from NYSDHR regulation.

On the other side, more directly on point, and more helpful, is a decision of the New York Appellate Division cited by plaintiff, <u>Greater Buffalo Chapter, Am. Red Cross v. State Div. of Human Rights</u>, 504 N.Y.S.2d 882 (App. Div. 1986). The court in that case held that even though the Red Cross was a federal instrumentality, it was subject to the NYSHRL. Echoing the national bank cases cited above, the court found that subjecting the Red Cross to regulation by the NYSDHR would not "directly interfere with any function performed by the Red Cross as a Federal instrumentality." <u>Id</u>. It noted that Red Cross employees were not federal employees, and that the Red Cross had not claimed that its personnel department was centralized. <u>Id.</u> As with the preemption cases cited above, a critical fact was the complementary nature of the federal and state schemes prohibiting employment discrimination: "Given the interrelated and complementary State and Federal laws dealing with discrimination in employment, requiring a local chapter of the Red Cross to comply with a State fair employment law cannot be said to interfere with the National purposes and Federal character of the Red Cross." <u>Id.</u> The court concluded: "It does not appear that responding to these subpoenas or complying with the Human Rights Law would directly interfere with any function performed by the Red Cross as a Federal instrumentality." <u>Id.</u>

Here, the question is whether the New York Fed's status as a federal instrumentality

immunizes it against regulation by the NYSDHR. There is no evidence before this Court of an

express congressional statement that Federal Reserve Banks, though federal instrumentalities, are

subject to state employment law. In the absence of express congressional authority for such

regulation, the Fed contends, its immunity is automatic. But the national bank cases cited above

militate against a finding of automatic immunity. They suggest, instead, that where an entity with

federal instrumentality status claims immunity from a particular state exaction, the proper test is

whether that exaction will interfere with the entity's federal function. This is the approach of the

New York Appellate Division in Greater Buffalo Chapter, the only case directly on point, and it is

the approach this Court adopts.

The Court finds the test for immunity not satisfied. It is uncontested that the New York

Fed "conduct[s] important governmental functions regarding the issuance of currency, general

fiscal duties of the United States, and, in general, regulate[s] the financial structure, either directly

or indirectly, of both federal and state banks." Fed. Reserve Bank of Boston, 499 F.2d at 62. It is

apparent, as well, that Congress intended the Federal Reserve Act's "dismiss at pleasure"

provision to grant the Federal Reserve Banks significant latitude in employment decision-making.

But the New York Fed is subject to federal employment laws, including Title VII and the ADA,

that limit its discretion in employment decision-making through an anti-discrimination scheme

designed for joint federal/state enforcement. And to the extent that state employment laws exceed

the procedural and substantive requirements of the federal employment laws, those state laws are

preempted. This Court fails to see how the enforcement of state employment laws that are

consistent with federal law to which the New York Fed is subject already will interfere with the

New York Fed's performance of its federal function. Accordingly, although the Court finds that

the New York Fed is a federal instrumentality, it rejects the New York Fed's claim to immunity from regulation by the NYSDHR.

## E. Conclusion

For the reasons explained above, upon reconsideration, the Court declines to find that the NYSHRL is preempted by federal law or that the New York Fed is exempt as a federal instrumentality from regulation by the NYSDHR. Thus the New York Fed is subject to regulation by the NYSDHR, the 300-day time limit applies, and plaintiff's claims are not time-barred. Accordingly, the Court affirms the holding of its August 8, 2005 Memorandum & Order, denying in part and granting in part defendant's motion to dismiss. As before, the Court reserves decision on the issue of punitive damages. Discovery should proceed with respect to plaintiff's allegations of retaliation both for her Title VII sex discrimination claim and for her claim under the ADA.

SO ORDERED.
Dated: Brooklyn, New York
      January 25, 2007

                            s/ Judge Raymond J. Dearie

                            RAYMOND J. DEARIE
                            United States District Judge